EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **NANCY CASTRO** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:21-cv-00702** |
| | § | |
| **WAL-MART INC.; CINTAS** | § | |
| **CORPORATION No. 2 D/B/A** | § | |
| **CINTAS CORPORATOION;** | § | |
| **WALMART STORES TEXAS, LLC;** | § | |
| **AND WALMART REAL ESTATE** | § | |
| **BUSINESS TRUST** | § | |
| *Defendants.* | | |

## AFFIDAVIT OF STEPHEN MELIA

BEFORE ME. The undersigned notary public, on this day personally appeared Stephen Melia, who being duly sworn, stated:

1. My name is Stephen Melia. I am over 18 years of age, of sound mind and am competent to make this affidavit.

2. I was retained on October 08, 2021, by The DeSouza Law Firm representing the plaintiff, Nancy Castro to provide consultation in the matter of Nancy Castro vs Walmart Inc.; Cintas Corporation No. 2 D/B/A Cintas Corporation; Walmart Stores Texas, LLC; and Walmart Real Estate Business Trust.

3. The matter involves an incident that occurred on Tuesday February 25, 2020, while Ms. Castro was walking out of the Walmart Fuel Station located at 510 Kitty Hawk Road, Universal City, TX.

4. As an expert in the field of safety and security and with over 31 years of experience with Walmart Stores, Inc. I have specific knowledge in the areas of policy and procedure that are considered standard in the industry as it relates to security, safety, criminal investigations, crowd management, accident and injury investigation, and security event planning.

CASTRO, Nancy 001647

5. During my tenure at Walmart and Sam's Club, I have conducted regular visits to Walmart Stores and Sam's Clubs to inspect procedures related to safety standards that included slip/trip and fall prevention, OSHA compliance, accident reviews, and employee safe work practices.

6. I have conducted numerous employee and customer accident investigations to determine the root cause and establish new processes or enforce existing procedures to mitigate future risk.

7. The facts contained in this matter are directly related to my professional knowledge, skills, experience and my familiarity with publications and regulations concerning industry standards related to safety, accident investigation and risk management at retail establishments.

8. I am familiar with the standards as set forth by the *"American Society for Testing and Materials (ASTM) Standard Practice for Safe Walking Surfaces"* , which states in section 5.4.6:

> *"Mats, runners, and area rugs shall be maintained so as not to create pedestrian hazards. Mats, runners, and area rugs shall not have loose or frayed edges, worn areas, holes, wrinkles, or other hazards that may cause trip occurrences."*

9. Based on my review of this incident to include the photographs and video produced by Walmart, the mat was not laying flat on the floor which created the unsafe condition, resulting in Ms. Castro tripping and falling as she walked toward the exit door.

10. Ms. Castro is observed on the Walmart CCTV camera completing her transaction at the register and walking toward the exit door when she tripped on the mat, fell forward hitting the front door, and landing on the floor.

11. Walmart management knew or should have known that placing a mat in the walkway that was not laying flat on the floor creates an unreasonable trip hazard for their customers.

12. Based on the photograph as presented as evidence in this matter, the mat was not laying flat and had ripples creating the trip hazard.

13. Walmart has a responsibility to maintain a safe premises to include ensuring that the entrance and exit floors are free of hazards. Walmart management and associates neglected their duty of care when they failed to inspect, maintain, and remove the mat which allowed the dangerous condition to exist.

14. In my professional experience, temporary mats are typically placed on the floor at entrance/exit ways during times of inclement weather to maintain a dry floor. These mats are usually removed or replaced when saturated or when inclement weather is no longer present.

15. Based on review of the video, the weather conditions outside were sunny and dry; therefore, it is my professional opinion the mat that Ms. Castro tripped on was not necessary. The video shows the cashier remove the mat after the incident photos are taken and no replacement mat is placed at the entrance exit.

CASTRO, Nancy 001648

16. In my professional opinion, the root cause of this trip and fall incident involving Ms. Castro was the created by the mat that was not laying flat on the surface of the floor.

17. With a reasonable degree of professional certainty, this incident would not have occurred if the mat were in good condition.

Stephen Melia, Affiant

SWORN AND SUBSCRIBED TO BEFORE ME on this the *17th* day of February 2022, to certify, witness my hand and seal of office.

NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

My Commission Expires:

February 26, 2024

Printed or Stamped Name:



GISELLE CARRILLO
Notary ID #132382839
My Commission Expires
February 28, 2024

CASTRO, Nancy 001649