## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

NANCY CASTRO,
       *Plaintiff*

-vs-

WAL-MART REAL ESTATE BUSINESS
TRUST,  CINTAS CORPORATION NO
2,  WAL-MART STORES TEXAS, LLC,
WAL-MART INC.,
       *Defendants*

§
§
§
§
§
§
§
§
§
§
§

SA-21-CV-00702-XR

### <u>ORDER</u>

On this date, the Court considered the parties' motions to exclude certain expert testimony (ECF Nos. 39, 44) and various motions for summary judgment (ECF Nos. 35, 36, 41, 42, 47). After careful consideration of the parties' briefing and their arguments at the hearing held on December 7, 2022, the Court issues the following order.

### BACKGROUND

On February 25, 2020, Plaintiff Nancy Castro was walking out of a Walmart gas station in University City, Texas, when she tripped on a curl in the floor mat that had been placed at the exit six days earlier. Plaintiff fell and suffered injuries to her  right arm and shoulder. Plaintiff underwent shoulder surgery in which a doctor inserted a metal plate and seven screws into her shoulder.

Plaintiff filed this action on July 23, 2021, alleging claims for premises liability, negligence, and gross negligence against Defendants Wal-Mart, Inc., Wal-Mart Stores Texas, LLC, and Wal-Mart Real Estate Business Trust (collectively, "Walmart") and claims for negligence and gross negligence against Cintas Corporation No. 2 ("Cintas"), the vendor that had supplied and placed the floor mat. *See* ECF No. 1.

The Court now considers several pre-trial motions. Walmart seeks to exclude the testimony of Plaintiff's designated safety expert, Stephen Melia (ECF No. 39), and Cintas seeks to exclude the testimony of Plaintiff's designated flooring expert, Robert McNealy (ECF No. 44). Plaintiff has also filed motions for summary judgment as to the affirmative defenses asserted by Cintas (ECF No. 35) and Walmart (ECF No. 36) and a motion for partial summary judgment as her premises liability claim (ECF No. 41). Walmart has moved for partial summary judgment as to Plaintiff's claims for negligence and gross negligence (ECF No. 42). For the reasons stated in open court at the hearing held on December 7, 2022, and set forth more fully herein, the Court issues the following order.

## DISCUSSION

### I.   Motions to Exclude Expert Testimony

#### A.   Legal Standard

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert" to testify if:

a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b)  the testimony is based on sufficient facts or data;

c)  the testimony is the product of reliable principles and methods; and

d)  the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id.* at 589. As a preliminary matter, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience,

2

training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). If the expert is qualified, a court must follow *Daubert*'s analytical framework to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id*. at 592–93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing reliability: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id*. at 593–94; *see also Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401. Expert testimony in the form of legal opinion invades the province of the Court and does not assist the trier of fact. While an expert opinion "is not objectionable just because it embraces an

ultimate issue" to be decided by the trier of fact, FED. R. EVID. 704(a), experts may not offer legal opinions or advise the Court on how the law should be interpreted or applied to the facts in the case. *See Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *see also Askanse v. Fatjo*, 130 F.3d 657, 672–73 (5th Cir. 1997).

A trial court's role as gatekeeper under *Daubert* "is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing Rule 702 advisory committee's note). Thus, in determining the admissibility of expert testimony, the court should approach its task "with proper deference to the [factfinder]'s role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also* FED. R. EVID. 104.

### B.   Analysis

#### 1.   Walmart's Motion to Exclude Testimony of Stephen Melia (ECF No. 39)[1]

Plaintiff has designated Stephen Melia as an expert in the field of safety and security. *See* ECF No. 77 at 5–8. Melia has over 31 years of experience with Walmart Stores, Inc., including as a senior director of asset protection and safety compliance, which required him to oversee the safety of approximately 300 stores. *See* ECF No. 55-3. While the Court does not doubt that Mr. Melia is qualified as an expert in the safety and security of Walmart stores, it is not clear how his testimony will be helpful to the jury. His proposed testimony as to both Walmart's safety policies

---

[1] Cintas has filed a notice of its joinder in this motion. ECF No. 51.

and standards and the condition of the mat in question are based on information that will be readily available to the jurors at trial.

Here, the Court agrees with Walmart that Mr. Melia's testimony will not be helpful to the jury, and, accordingly, Cintas's motion to exclude Mr. McNealy's testimony (ECF No. 39) is granted.

### 2.    Cintas's Motion to Exclude Testimony of Robert McNealy (ECF No. 44)[2]

Plaintiff has designated Robert McNealy as a flooring expert. *See* ECF No. 77 at 5–8. He is expected to testify as to the condition of the mat. *Id.* Cintas challenges his qualifications as an expert and the foundation for and timeliness of certain of his opinions. *See generally* ECF No. 44.

The Court is satisfied that McNealy is qualified as a flooring expert. He is a certified walkway auditor, a certified flooring inspector, and a certified resilient flooring expert. He has fifteen years of experience in the flooring industry, as a contractor, certified inspector, walkway auditor, and expert witness. Plaintiff notes that Melia's *curriculum vitae* indicates he has attended at least 47 different trainings regarding inspection, flooring, and safety.

Nonetheless, the Court is not convinced that Mr. McNealy's testimony as to the condition of the mat will be helpful to the jury, given that it will primarily rely on video footage available to the jury. A number of courts have addressed expert testimony on video recordings and have concluded that the expert should not be permitted to interpret the video's contents where the expert is no better suited than a lay person to do so. *See, e.g.*, *Slack v. City of San Antonio*, No. SA-18-CV-01117-JKP, 2021 WL 1390428, at *4 (W.D. Tex. Apr. 13, 2021), *reconsideration denied*, No. SA-18-CV-01117-JKP, 2021 WL 1857301 (W.D. Tex. Apr. 30, 2021) (excluding testimony); *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (affirming exclusion of expert opinion that decedent

---

[2] Walmart has filed a notice of its joinder in this motion. ECF No. 48.

was not holding firearm because "the jury was entirely capable of analyzing the images and determining whether Fong Lee had anything in his hands").

Here, the Court agrees with Cintas that Mr. McNealy's testimony will invade the province of the jury, and, accordingly, Cintas's motion to exclude Mr. McNealy's testimony (ECF No. 44) is granted.

## II.   Motion for Spoliation Sanctions

Plaintiff requests a negative inference jury instruction in connection with Walmart's alleged spoliation of video footage of the mat in the hours and days preceding the accident. ECF No. 40.

The loss of electronically stored information is governed by Rule 37(e), which provides:

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e).

Rule 37(e) was amended in 2015 to allow courts to impose certain severe sanctions for the intentional failure of a party to preserve relevant ESI, but only after a finding that the party "acted with the intent to deprive another party of the information's use in the litigation." *Id*. If the court does not find that the spoliating party acted with an intent to deprive, but determines that the loss

of ESI prejudiced another party, it may then impose lesser sanctions in the form of "measures no greater than necessary to cure the prejudice." *Id*. Importantly, Rule 37(e) and its available sanctions only apply if it is determined that lost ESI "should have been preserved." *Id*. The party seeking the spoliation sanction bears the burden of proof. *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011) (internal quotation marks omitted). Generally, federal courts have stated that the "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003); s*ee also Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (*citing Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)).

Not every slip and fall places a premises owner on notice that litigation is imminent. In this case, however, Plaintiff sent Walmart a request to preserve all evidence related to her fall just one day after the incident. *See* ECF No. 41 at 5. It is undisputed that Walmart preserved video footage pertaining to Plaintiff's incident for the one-hour time period immediately preceding and immediately following the accident. Plaintiff suggests that Walmart should have preserved additional video footage, arguing that later in discovery it became known that Cintas placed the mat at the premises six days prior to the Plaintiff's fall.

Plaintiff concedes that she does not have evidence to establish that Walmart acted with intent to deprive her of the additional video evidence. Accordingly, sanctions are not appropriate under Rule 37(e)(2).

Nor are sanctions appropriate under 37(e)(1). First, Plaintiff must establish that the additional portions of video should have been preserved immediately when Plaintiff sent its letter to preserve evidence. Plaintiff's own retained expert witness Stephen Melia, who was employed

by Walmart, confirmed that it is "standard to retain video an hour prior to and an hour after an incident occurs." ECF No. 53-3, Melia Dep. at 68:6–21. The delivery of the mat by Cintas was discovered during the discovery phase of this litigation, and well after video was written over (60-90 days cycle). Further, Plaintiff has not demonstrated that she has been prejudiced by the loss of the additional video. The footage available shows that at least four Walmart associates passed through the area of the incident during the one-hour period prior to the fall. ECF No. 41 at 9–10, 12. In addition, the available footage shows a curl in the mat prior to Plaintiff's fall. In short, there is no evidence that Walmart acted intentionally or in bad faith. Nor is there any evidence that Walmart failed to take reasonable steps and there is no prejudice shown that requires the imposition of any remedial measures.

Accordingly, Plaintiff's motion for spoliations sanctions (ECF No. 41) must be denied in its entirety.

## III.   Motions for Summary Judgment

### A.   Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**B.   Analysis**

    **1.   Motions for Summary Judgment as to Walmart (ECF No. 36, 41, 42 )**

Plaintiff has filed a motion for summary judgment as to Walmart's affirmative defenses (ECF No. 36) and a motion for partial summary judgment as to the first two elements of Plaintiff's claim for premises liability (ECF No. 41). Walmart opposes these motions (ECF Nos. 37, 53) and has separately moved for partial summary judgment as to Plaintiff's claims for negligence and gross negligence (ECF No. 42). Plaintiff opposes Walmart's motion for summary judgment. ECF No. 57. The Court will address Plaintiff's claims for negligence, premises liability, gross negligence before reaching Walmart's affirmative defenses.

    *(a)   Negligent Activity*

Walmart asserts that Plaintiff cannot support her claim for negligence as a matter of law. ECF No. 42. The threshold issue is whether Plaintiff's negligence claim is based on negligent conduct or premises liability. In Texas, general negligence and premises liability claims are "separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463 (Tex. 2017). They are not interchangeable; each theory requires certain proof and is subject to certain defenses. *Id.* ("Negligent-activity and premises liability claims 'involve closely related but distinct duty analyses.'") (quoting *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)). Depending on the circumstances, a person injured on another's property may have either claim against the property owner. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2015).

In *Occidental*, the Texas Supreme Court explained how to distinguish between a general negligence claim and a premises liability claim: "When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When

the injury is the result of the property's condition rather than an activity, premises-liability principles apply." *Id.* (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)) (emphasis added). Put another way, negligent activity "encompasses a malfeasance theory based on affirmative, contemporaneous conduct" by the property owner, while premises liability "encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *United Scaffolding*, 537 S.W.3d at 471 (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)).

"Creative pleading does not change the nature of a claim; if a claim is properly determined to be one for premises defect, a plaintiff cannot circumvent the true nature of the claim by pleading it as general negligence." *United Scaffolding*, 537 S.W.3d at 470–71. A plaintiff's characterization of his or her claims does not control—the allegations must be examined to determine whether they contain contemporaneous negligent-activity claims or premises liability claims. *Id.* at 480. While "negligent-activity" claims are based on "affirmative, contemporaneous conduct by the owner that caused the injury," premises-liability claims encompass "non-feasance theories" based on the "owner's failure to take measures to make the property safe." *Id.* at 471. The essential question is whether Plaintiffs' claims resulted from a contemporaneous negligent action or an alleged failure to make safe a static condition on the property. *Id.* at 471–72.

In *United Scaffolding*, the Texas Supreme Court applied this framework to determine whether a plaintiff's claims sounded in general negligence or premises liability. *See generally id.* There, a worker was injured after a piece of plywood secured to a scaffold slipped from under him and he fell. *Id.* at 472. He alleged that the property owner created a dangerous condition and then failed to "adequately determine the dangerous conditions created," "correct the dangerous condition which existed with the scaffolding," "secure the scaffolding in a proper and safe work

condition," and "warn 'that a dangerous condition existed.'" *Id.* at 472. At trial, the case was submitted to the jury on a general negligence theory, and the jury found against the property owner. On appeal, the Texas Supreme Court held that the "only fair reading" of the plaintiff allegations was that injuries "resulted from a physical condition left on the property . . .  not some contemporaneous activity." *Id.* at 473. Therefore, his claims sounded in premises liability and not general negligence.

The time that elapses between alleged negligent conduct and an injury helps distinguish contemporaneous negligence claims from premises liability claims. This is because "[a]t some point, almost every artificial condition can be said to have been created by an activity." *Keetch*, 845 S.W.2d at 264. To state a claim for negligent activity liability, a plaintiff must show that the alleged negligent activity and the alleged injuries were close in time. In *Keetch*, the thirty minutes that passed between a grocery spraying plants in the floral department and a customer slipping on liquid which had pooled in the floor was sufficient to take the claim outside of negligent activity liability. That is because "[t]here was no ongoing activity when [the customer] was injured." *Id.* As Texas Supreme Court explained, the customer "may have been injured by a condition created by the spraying but she was not injured by the activity of spraying." *Id.*

*United Scaffolding* and *Keetch* make clear that Plaintiffs' claim sounds in premises liability. Accordingly, Walmart's motion for summary judgment as to Plaintiff's claim for negligent activity is granted.

b)    *Premises Liability*

Texas requires an invitee such as Plaintiff to prove four elements to prevail on a premises liability claim: (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner

failed to take reasonable care to reduce or eliminate the risk; and (4) the risk was the proximate cause of injuries to the invitee. *Garcia v. Wal-Mart Stores Tex., L.L.C.*, 893 F.3d 278, 279 (5th Cir. 2018) (quoting *Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014)).

Plaintiff moves for summary judgment as to the first two elements and urges the Court to find as a matter of law that the curls in the mat posed an unreasonable risk of harm and that Walmart should have known about the mat's condition. *See* ECF No. 41 at 9–10. Walmart responds that the video footage of the incident showing many people walking over the mat without incident creates a genuine issue of material fact as to whether the mat's condition posed an unreasonable risk of harm. *See* ECF No. 62 at 6–7. "In a premises liability case such as this, the defendant's negligence is determined by asking whether the defendant 'exercise[d] reasonable care to reduce or to eliminate the risk' created by the premises defect. Negligence is commonly a question of fact unless the evidence establishes a complete absence of negligence as a matter of law." *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009) (internal citations omitted). Whether the mat at issue here at the time of the incident posed an unreasonable risk of harm to the Plaintiff is an issue for the jury to resolve. Accordingly, Plaintiff's motion for partial summary judgment against Walmart as to her premises liability (ECF No. 41) claim must be denied.

### c) Gross Negligence

To recover for gross negligence in Texas, a plaintiff must satisfy the elements of an ordinary negligence or premises liability claim and demonstrate two elements by clear and convincing evidence. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (citing TEX. CIV. PRAC. & REM. 41.003(b) (amended by Act of April 6, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 110)); *State v. Shumake*, 199 S.W.3d 279, 286 (Tex. 2006). First, a plaintiff must establish that the act or omission of the defendant involved an extreme degree of risk. TEX.

CIV. PRAC. & REM. 41.001(11)(A); *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 784–86 (Tex. 2001). Second, the plaintiff must establish that the defendant had *actual, subjective* awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. TEX. CIV. PRAC. & REM. 41.001(11)(A); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994).

Extreme risk is not merely "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Moriel*, 879 S.W.2d at 22 (quoting *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 327 (Tex. 1993). The alleged "extreme risk" must be examined from the perspective of the actor at the time of the incident, not in hindsight. *Moriel*, 879 S.W.2d 10 at 23. "The standard for proving gross negligence under Texas law is considerably more stringent than the 'reasonable person' standard for ordinary negligence." *Henderson v. Norfolk S. Corp.*, 55 F.3d 1066, 1070–71 (5th Cir. 1995); *see also Alexander*, 868 S.W.2d at 327 (holding that gross negligence must involve an "objectively higher risk than ordinary negligence").

In this case, the evidence demonstrates that a Walmart employee may have noticed the mat with a curl in it on at least three occasions prior to Plaintiff's fall. For purposes of summary judgment, a fact issue exists as to whether Walmart acted with conscious indifference with regard to Plaintiff. The Court cautions Plaintiff, however, that this analysis may differ after Plaintiff's case-in-chief and the Court is asked to rule on any motion for judgment as a matter of law.

Accordingly, Walmart's motion for summary judgment as to Plaintiff's claim for gross negligence is denied.

##### (a)   *Walmart's Affirmative Defenses*

###### (i)   Contributory Negligence

Plaintiff moves for summary judgment as to Walmart's affirmative defense of contributory negligence because its corporate representative could not identify during her deposition what Plaintiff "did wrong." ECF No. 36 at 2–3. Notwithstanding these statements, Walmart asserts that the video footage and photographs demonstrate that the condition was open and obvious and serve as sufficient evidence to defeat Plaintiff's motion for summary judgment. When a condition is open and obvious, "the law presumes that invitees will take reasonable measures to protect themselves." *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 203 (Tex. 2015). The issue of whether Plaintiff's conduct was a factual cause of the accident and her claimed damages is not susceptible to resolution on summary judgment. On a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. Accordingly, Plaintiff's motion is denied.

###### (ii)   Unknown Responsible Third Party

Plaintiff asserts that Walmart has an "absence of evidence" that Plaintiff's injuries were caused by a responsible third party. *See* ECF No. 36 at 1. The Court agrees with Plaintiff that her motion must be granted as this affirmative defense given that Walmart has not identified any responsible third parties. Nothing in this ruling, however, shall preclude Walmart from arguing at trial that certain of Plaintiff's physical pain and suffering, mental anguish, medical expenses, physical impairment, or disfigurement are the result of her cancer diagnosis and treatment. ECF No. 37 at 9–11.

###### (iii) Failure to Mitigate Damages

Plaintiff asserts that Walmart cannot establish that she failed to mitigate her damages because Walmart's own expert agreed that all of the surgeries and treatments that she has received

were necessary. ECF No. 36 at 5. Walmart responds that its defense is not premised on the necessity of the surgeries but on Plaintiff's failure to follow physician recommendations to fully perform physical therapy and her home exercise program. ECF No. 37 at 9–11. Accordingly, Plaintiff's motion for summary judgment is denied as to the failure to mitigate damages defense.

### 2.   Motions for Summary Judgment as to Cintas (ECF No. 35, 47)

Plaintiff has moved for summary judgment as to Cintas's affirmative defense of comparative fault. ECF No. 35. Cintas opposes this motion (ECF No. 38) and has separately moved for summary judgment on Plaintiff's claims for negligence and gross negligence (ECF No. 47). Plaintiff has not responded to Cintas's motion and the time in which to do so has expired.

### a)   *Negligent Activity*

Cintas argues that the last time a Cintas employee was in the store at question was six days prior to the Plaintiff's fall. ECF No. 47. It asserts that there is no evidence to establish that it delivered a defective mat or that the mat was unreasonably dangerous when delivered to the store. Accordingly, it argues that all the negligence claims asserted against it fail as a matter of law.

Under Texas law, tort liability depends on both the existence of and the violation of a duty; whether a duty exists is a question of law for the Court. *Lefmark Mgmt Co. v. Old,* 946 S.W.2d 52, 53 (Tex. 1997), *citing Centeq Realty, Inc. v. Siegler*, 899 S.W. 2d 195, 197 (Tex. 1995). Generally, a landowner or one who is otherwise in control of the premises must use reasonable care to make the premises safe from unreasonable risks. *Id.* at 53. However, under certain circumstances a third party who creates an unreasonably dangerous condition may also be liable for injuries caused by that condition if they leave another's property in an unsafe condition. *See N.M. Hubbard, Inc. v. Gehring,* 360 S.W.2d 787, 791 (Tex. 1962).

In this case, there is no dispute that Walmart was in sole control of the premises in the case, as such, Cintas had no duty to warn the Plaintiff nor to make the premises safe for the Plaintiff. Plaintiff's petition seems to suggest that Cintas' role in the case, rather, is the creation of an unreasonably dangerous condition that caused the Plaintiff's injuries. Plaintiff, however, presents no evidence that the mat was defective when delivered or placed incorrectly at the store and accordingly fails to establish any of the essential elements of any of her negligence claims against Cintas.

Accordingly, Cintas's motion for summary judgment as to Plaintiff's negligence claim (ECF No. 47) is granted.

### b)    Gross Negligence

Because Plaintiff's claim for negligence against Cintas fails, her claim for gross negligence likewise fails. *See Charles v. K-Patents, Inc.*, No. 1:17-CV-339, 2018 WL 9869532, at *8 (E.D. Tex. Aug. 10, 2018) ("[O]ne's conduct cannot be grossly negligent without being negligent.") (quoting *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied)); *Dekelaita v. BP Amoco Chem. Co.*, No. G-07-0131, 2008 WL 2964376, at *15 (S.D. Tex. July 30, 2008) ("a finding of ordinary negligence is a prerequisite to a finding of gross negligence.") (collecting cases). Plaintiff's claim against Cintas for gross negligence must be dismissed.

### c)    Cintas's Affirmative Defenses

Because the Court grants Cintas's motion for summary judgment in its entirety, Plaintiff's motion for summary judgment as to Cintas's affirmative defense of contributory negligence (ECF No. 35) is moot.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to exclude the expert testimony of Stephen Melia (ECF No. 39) and Robert McNealy (ECF No. 44) are **GRANTED**.

Walmart's motion for partial summary judgment (ECF No. 42) is **GRANTED IN PART** as to Plaintiff's claim for negligence and **DENIED IN PART** as to Plaintiff's claim for gross negligence. Plaintiff's claims against Walmart for negligence and negligent activity are **DISMISSED WITH PREJUDICE**.

Plaintiff's motion for partial summary judgment as to the first two elements of her claim for premises liability against Walmart and motion for sanctions (ECF No. 41) are **DENIED**. Plaintiff's claim for premises liability against Walmart may proceed to trial.

Plaintiff's motion for summary judgment as to Walmart's affirmative defenses (ECF No. 36) is **DENIED**.

Cintas's motion for summary judgment (ECF No. 47) is **GRANTED**. Plaintiff shall take nothing by her claims against Cintas and her claims against Cintas are **DISMISSED WITH PREJUDICE**.

Plaintiff's motion for summary judgment as to Cintas's affirmative defense of contributory negligence (ECF No. 35) is **MOOT**.

It is so **ORDERED**.

SIGNED this 8th of December, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE